UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**CHARLES H. KINLEY,**
           **Plaintiff**

**v.**                                       **Civil Action No.**
                                                         **3:04CV417-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
           **Defendant**

## MEMORANDUM OPINION

This case presents plaintiff Charles H. Kinley's challenge to the decision of the defendant Commissioner denying his claim to disability insurance benefits and supplemental security income payments. After examining the record as a whole, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the matter must be remanded for further proceedings.

Mr. Kinley filed his applications in December of 2002, alleging that he had been unable to engage in any substantial gainful activity since November of 2000. After a hearing, the Administrative Law Judge ("ALJ") determined that Mr. Kinley's past work was "of questionable vocational relevance," and, therefore, that Mr. Kinley was unable to perform any past relevant work. The ALJ further determined that Mr. Kinley retained the residual functional capacity to perform a significant range of unskilled medium work. This became the decision of the Commissioner when the Appeals Council denied review.

If the Commissioner's decision is supported by substantial evidence, the reviewing Court

must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991). The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion. Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

A central issue in the case concerns the status of Mr. Kinley's seizure condition during 2000 to 2003. The ALJ stated, " When he first sought treatment in early 2003, he reported he had not had a seizure in two or three years, so this diminishes his allegations of disability since November 2000." Tr. 16. Mr. Kinley argues that this conclusion resulted from the ALJ's having misread a physician's report. Such a misreading would mean that there is an absence of substantial evidence to support the ALJ's decision. The Court agrees that the ALJ appears to have misread the records.

Dr. Patel noted on January 24, 2003 that Mr. Kinley "also states has seizures and needs some medicine for that. Patient was on phenobarbital and dilantin, but not on any meads [now]. Last seizure 2 days ago." Tr. 130. Contrary to the ALJ's statement, Dr. Patel did not record anything suggesting a two year seizure-free period. On February 7, 2003, Dr. Patel noted that Mr. Kinley "took Dilantin/Phenobarb until 2 yrs ago, none since then because he didn't have insurance." Tr. 129. Again, the record does not indicate absence of seizures during the two year period when Mr. Kinley had no insurance. However, the record is quite clear that when Mr. Kinley began psychiatric treatment at Communicare on January 21, 2003, he reported a "history

of 'seizures all my life'" and again reported that he had been unable to afford his anticonvulsant medications "for the past 2 years secondary to being unemployed and having no money to pay for the medication." Tr. 211.

Another record that could possibly be in issue is the August 19 handwritten report from the University of Louisville neurology clinic which either says "3 yrs h/o seizure," or "3 yrs wo seizure." Tr. 235. Without explaining a basis, the ALJ apparently selected the latter reading, as he stated, "he reported no seizure activity in the last three years, but that he currently has two to three seizures per week." Tr. 15. In fact, however, the record states that on Keppra (which Mr Kinley had then been taking for several months), the seizures had gone from a frequency of two to three times a week to a frequency of once a week.

The Commissioner insists that any claim that Mr. Kinley had been having regular seizures during this time period would not be credible based on the record. However, the Court notes that at least with respect to Mr. Kinley's mental impairment, the ALJ found no reason to discredit the testimony. The only other discussion possibly relating to credibility concerns what the ALJ interpreted as "inconsistent" statements regarding seizure history. Having concluded erroneously that the records reported a two year absence of seizure activity, the ALJ viewed Mr. Kinley's report that seizures had continued during that time as "inconsistent." Tr. 16. As noted above, however, the "inconsistency" resulted from the ALJ's having misread the medical records, not from Mr. Kinley's having stated different things at different times. It would be invading the province of the fact-finder to accept the Commissioner's invitation to make a credibility determination at this stage. This Court must not speculate concerning the conclusions the ALJ would have reached absent the misreading of the records. It is clear that

both frequency and severity were critical questions for the ALJ (see Tr. 16).  Consequently, it cannot be said that the misreading error was insignificant, and it is necessary to remand the matter for a new determination.

      An order in conformity has this day entered.